UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHIRLEY MARIE VILLARINO,<br><br>                Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                Defendant. | Case No. C12-760-MJP-BAT<br><br>**REPORT & RECOMMENDATION** |

Shirley Marie Villarino seeks review of a partially favorable decision finding her eligible for Disability Insurance Benefits between July 1, 2005 and August 31, 2010. Ms. Villarino contends the ALJ erred in finding medical improvement rendered her no longer disabled as of September 1, 2010. Dkt. 12 at 1. The Court agrees and recommends the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four.

## BACKGROUND

The ALJ issued a partially favorable decision on January 1, 2011, finding Ms. Villarino disabled between July, 1, 2005, and August 31, 2010. Tr. 11-21. In specific, the ALJ found:

- Ms. Villarino had not worked since July 1, 2005.

- At all times relevant to the decision, status post osteomyelitis of the lumbar spine, degenerative disk disease of the lumbar spine, status post surgery, obesity, bilateral hip flexion contractures, and heroin abuse, in remission were severe impairments.

REPORT & RECOMMENDATION - 1

- These impairments did not meet the requirements of a listed impairment.

- From July 1, 2005 through August 31, 2010, Ms. Villarino had the residual functional capacity ("RFC") to perform less than a full range of sedentary work as follows: She could lift no more than 10 pounds; could sit for less than 6 hours in an 8 hour day, could walk or stand for about 2 hours in an 8 hour day and could crouch, crawl, balance, kneel, and stoop occasionally. She should avoid hazards and concentrated exposure to the cold and full body vibrations. Due to her impairments and pain, she could not maintain work activity on a regular and continuous basis for a 5-day, 40-hour week.

- Ms. Villarino could not perform her past work or other work and from July 1, 2005 through August 31, 2010 considering her age, background, and RFC. Ms. Villarino was therefore under disability from July 1, 2005 through August 31, 2010.

- Medical improvement occurred as of September 1, 2010, and beginning on that date Ms. Villarino did not have an impairment that met a listed impairment and retained the RFC to perform less than a full range of sedentary work as follows: She could lift no more than 10 pounds; sit for less than 6 hours in an 8 hour day, could walk or stand for about 2 hours in an 8 hour day and could crouch, crawl, balance, kneel, and stoop occasionally; she can climb ramps seldom and should avoid hazards and concentrated expose to cold and body vibrations. She could perform simple tasks and some complex tasks.

- The medical improvement was related to the ability to work because in comparing Ms. Villarino's functional capacity to work prior to September 1, 2010, that capacity had increased.

- Beginning on September 1, 2010, Ms. Villarino was unable to perform her past relevant work.

- Beginning on September 1, 2010, there were other jobs Ms. Villarino could perform; her disability therefore ended on that date.

Tr. 61-72. The Appeals Council denied review making the ALJ's decision the Commissioner's final decision.

## DISCUSSION

**A.    Summary**

The ALJ found Ms. Villarino disabled from July 1, 2005 through August 31, 2010 but that she could perform work beginning September 1, 2010, due to medical improvement. Ms.

REPORT & RECOMMENDATION - 2

Villarino contends the ALJ erred in finding medical improvement by (1) failing to find depression and anxiety disorder, post-laminectomy syndrome, and fibromyalgia were severe impairments at step two and failing to account for limitations caused by these conditions in finding medical improvement; (2) improperly assessing the medical evidence regarding medical improvement; and (3) discounting her testimony about her pain.

The Court recommends reversal. The ALJ found Ms. Villarino had the RFC to perform less than sedentary work but "due to her impairments and pain, she could not maintain work activity on a regular and continuous basis" and was thus disabled between July 1, 2005 and August 31, 2010. Tr. 16-17. The ALJ also found beginning September 1, 2010, Ms. Villarino had the RFC to perform the same level of work—less than sedentary work—but due to medical improvement she no longer was disabled. Substantial evidence supports the ALJ's finding Ms. Villarino's physical "impairments" improved; however, substantial evidence does not support the ALJ's finding there was medical improvement regarding Ms. Villarino's pain. The ALJ therefore erred and the matter should be remanded for further proceedings pursuant to sentence four.

The Court rejects Ms. Villarino's claim the ALJ erred at step two. The record does not show depression and anxiety disorder, post-laminectomy syndrome, or fibromyalgia were medically determinable impairments. The ALJ thus did not err in failing to find these conditions were severe impairments at step two or failing to account for any alleged limitations caused by these conditions in assessing Ms. Villarino's RFC, or in assessing medical improvement. The Court also rejects Ms. Villarino's claim the ALJ erred in discounting her testimony. The ALJ credibility determination was not error free but the errors the ALJ committed were harmless.

REPORT & RECOMMENDATION - 3

**B.     The ALJ's medical improvement determination**

The ALJ found Ms. Villarino disabled from July 1, 2005 through August 31, 2010.  Once a claimant has been found to be disabled, a presumption of continuing disability arises in the claimant's favor and the Commissioner bears the burden of producing evidence sufficient to rebut the presumption of continuing disability.  *Bellamy v. Secretary of Health & Human Serv.*, 755 F.2d 1380, 1381 (9th Cir. 1985).  Hence, before disability benefits can be terminated on the ground that the recipient is no longer disabled, the Commissioner must introduce evidence that the recipient's medical condition has improved.  42 U.S.C. § 1382c(a)(4); 20 C.F.R § 416.994; *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir.1983); *Flaten v. Secretary Of Health & Human Servs.*, 44 F.3d 1453, 1459 (9th Cir. 1995).  A medical improvement is:

> [A]ny decrease in the medical severity of [a recipient's] impairment(s) which was present at the time of the most recent favorable medical decision that [the recipient was] disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the recipient's] impairment(s). . . .

20 C.F.R § 416.994(b)(1)(i),(2)(i).

Here, the ALJ found Ms. Villarino had the RFC to perform less than the full range of sedentary work, and that "due to her impairments and pain, she could not maintain work activity on a regular and continuous basis" and was thus disabled between July 1, 2005 and August 31, 2010. Tr. 16-17.  In specific, the ALJ found the medical evidence was consistent with Ms. Villarino's claims that narcotic pain medications did not fully control her pain; that she had persistent severe low back pain; that she walked with difficulty, could not stand up straight, could lift very little weight, and could not perform many daily activities, bend over, or drive.  Tr. 16.

REPORT & RECOMMENDATION - 4

The ALJ found beginning September 1, 2010, Ms. Villarino had the same RFC—less than the full range of sedentary work—but was no longer disabled due to medical improvement. Tr. 18, 20.

In specific, the ALJ found

> The medical record shows significant improvement in the claimants [sic] symptoms by September 2010. For instance, progress notes from April 2007 indicate a [sic] least some improvement in the claimant's symptoms subsequent to surgery. She reported that her pain was improved and that overall, she was pleased with the results of her surgery. She was able to take balanced steps on her toes and heals [sic] (Ex. 14F/1). Later treatment notes show intermittent complaints of back pain but few objective findings indicative of significant limitations.
>
> The claimant received conservative treatment only, consisting of physical therapy and prescription pain medication. (Ex.15F; 17F; 24).
>
> At least some of the alleged symptoms may have been associated with noncompliance by the claimant. For instance, in July 2009, the claimant was discharged from physical therapy because she failed to attend seven sessions (Exp. 22F/5).
>
> The most recent findings (from a September 2010 orthopedic consultative examination) show affirmative evidence that the claimant's condition has improved significantly.

Tr. 18-19. The ALJ further found Molly Fuentes, M.D., who performed the September 2010 orthopedic examination, "recorded findings indicative of less than disabling functional limitations." Tr. 19. Ms. Villarino has not assigned error to the ALJ's evaluation of Dr. Fuentes' examination, nor has she challenged Dr. Fuentes' opinion that Ms. Villarino has the RFC to perform less than sedentary work. *See* Tr. 602-06. Accordingly, substantial evidence supports the ALJ's finding that Ms. Villarino's physical "impairments" improved.[1]

---

[1] Dr. Fuentes opined Ms. Villarino had the physical capacity to perform less than sedentary work in view of the doctor's findings that Ms. Villarino was 64 inches tall, weighed 261 pounds and

REPORT & RECOMMENDATION - 5

However, substantial evidence does not support the ALJ's finding there was medical improvement regarding Ms. Villarino's pain. The ALJ found:

> The medical record shows significant improvement in the claimants [sic] symptoms by September 2010. For instance, progress notes from April 2007 indicate a [sic] least some improvement in the claimant's symptoms subsequent to surgery. She reported that her pain was improved and that overall, she was pleased with the results of her surgery. She was able to take balanced steps on her toes and heals [sic] (Ex. 14F/1). Later treatment notes show intermittent complaints of back pain but few objective findings indicative of significant limitations. The claimant received conservative treatment only, consisting of physical therapy and prescription pain medication.

Tr. 18. This finding relies on medical records that pre-date August 31, 2010—records on which the ALJ relied in finding Ms. Villarino was disabled due to impairments and **pain** from July 2005 through August 31, 2010. These records show what Ms. Villarino's pain complaints were prior to August 31, 2010. They thus cannot and do not show Ms. Villarino's pain complaints improved after August 31, 2010. Moreover, as Ms. Villarino argues, the medical record does not, in any event, show her pain complaints were intermittent at any point in time. To the contrary, the record shows her doctors consistently noted she had chronic pain and that she regularly saw her doctors to renew her prescriptions for narcotic pain medications. *See, e.g.,* Tr 433-601.

The only medical evidence regarding medical improvement from August 31, 2010 onward is Dr. Fuentes's September 10, 2010, orthopedic examination. But this examination focused on Ms. Villarino's exertional capacity and did not contain an opinion or assessment of Ms. Villarino's pain or its impact on her ability to maintain work activity on a regular and

---

had limitations arising from peripheral neuropathy. *See* Tr. 604, 606. The ALJ placed great weight on the doctor's opinion and thus contrary to Ms. Villarino's claims (Dkt. 12 at 19-21) the ALJ did consider Ms. Villarino's obesity and peripheral neuropathy.

REPORT & RECOMMENDATION - 6

continuous basis.  The examination merely confirmed Ms. Villarino continued to have pain complaints in that it noted she "currently takes methadone 60 mg every 12 hours for chronic pain control, and tylenol for breakthrough pain" and that "the pain is exacerbated by walking and standing."  Hence, Dr. Fuentes' examination does not establish medical improvement of Ms. Villarino's pain complaints.

Accordingly, the Court concludes the ALJ failed to meet her burden of producing evidence sufficient to rebut the presumption of continuing disability as it relates to Ms. Villarino's previously found disabling pain complaints.  This error is not harmless as the ALJ has not shown medical improvement on one of the two grounds she relied upon in finding Ms. Villarino disabled through August 31, 2010—pain complaints that prevented Ms. Villarino from maintaining work activity on a regular and continuous basis.

The Court also concludes the matter should be remanded for further proceedings.  Where an ALJ has committed reversible error, the Court has the discretion to remand for further proceedings or to award benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citation omitted).  If additional proceedings can remedy defects in the original administrative proceedings, as is the case here, a social security case should be remanded for further proceedings. *McCartey*, 298 F.3d at 1076.

Dr. Fuentes addressed Ms. Villarino's exertional limits but did not address non-exertional limits sufficiently to make a medical improvement determination.  The medical record prior to August 2010 established Ms. Villarino's physical and pain limitations rendered her disabled through August 31, 2010, but do not elucidate whether there was medical improvement

thereafter, as to Ms. Villarino's pain complaints. The medical record is thus not fully developed and the Court recommends the matter be remanded for further administrative proceedings pursuant to sentence four. The Court further recommends the scope of remand be limited to reassessing or developing the medical record regarding medical improvement as to Ms. Villarino's pain symptoms and complaints.[2] The scope of remand should also be circumscribed by the Court's determination, discussed below, that the ALJ did not err at step two, or in assessing Ms. Villarino's credibility.

**C.     The ALJ's Step Two Evaluation**

At step two, the ALJ did not find post laminectomy syndrome, fibromyalgia, depression, and anxiety disorder were severe impairments. Dkt. 12 at 5. Substantial evidence supports the ALJ's step two findings. At step two, Ms. Villarino had the burden to show each alleged condition was a medically determinable impairment and that each significantly limited her ability to perform basic work activities for at least 12 continuous months. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 416.920(c). Evidence from an acceptable medical source is required to establish the existence of a medically determinable severe impairment. 20 C.F.R. § 416.913(a). Acceptable medical sources include licensed physicians, either medical or osteopathic doctors. *Id*.

The ALJ may consider evidence from other sources to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. § 416.913(d). Other sources include medical sources who are not acceptable medical sources, such as naturopaths, and non-medical sources, including spouses or other family members. *Id*. However, information from individuals who are not acceptable medical sources cannot establish the existence of a

---

[2] This necessarily would include the effect of Ms. Villarino's pain medications on her ability to perform work.

REPORT & RECOMMENDATION - 8

medically determinable severe impairment.  Social Security Ruling ("SSR") 06-03p.

An impairment is medically determinable only where it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 416.908.  To be medically determinable, a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings.  *Id*.  Symptoms are the claimant's own descriptions of his physical or mental impairment.  20 C.F.R. § 416.928(a).  However, a claimant's statement of symptoms alone is not enough to establish a physical or mental impairment.  20 C.F.R. § 416.908, 416.928(a).

As discussed below, substantial evidence supports the ALJ's step two finding that depression, anxiety state, fibromyalgia and post-laminectomy syndrome are not severe impairments.[3]  Further, because there was insufficient evidence to establish these conditions were medically determinable impairments, the ALJ did not err in disregarding them in assessing Ms. Villarino's RFC.

### *1. Depression & Anxiety*

The ALJ found Ms. Villarino's depression and anxiety were not medically determinable impairments on the grounds the record failed to establish a "clear mental diagnosis from an acceptable medical source supported by objective findings." Tr. at 15.  Ms. Villarino contends the ALJ erred arguing Timothy Harold Dellit, M.D., and Randall Chestnut, M.D., "clearly diagnosed" depression and anxiety.  Dkt. 12 at 10.  The record does not support this contention.

---

[3] Ms. Villarino also suggests the ALJ erred in failing to further develop the record regarding conditions the ALJ found not severe.  Dkt. 13 at 13.  An ALJ has a duty to develop the record only where it is ambiguous or inadequate, not where as here, it is insufficient to support a claimant's disability application.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

REPORT & RECOMMENDATION - 9

Both doctors examined and treated Ms. Villarino for back problems. Tr. 393-96, 401-02. While they noted a past history[4] of depression (Tr. 394), neither diagnosed Ms. Villarino with depression nor did either find any medical signs establishing the existence of a mental disorder. Tr. 395. In fact neither doctor examined Ms. Villarino for mental health problems, noted any symptoms consistent with mental problems, diagnosed a mental problem, or recommended treatment for mental problems.

Ms. Villarino also argues Robert Molina, M.D., who treated her for back pain noted an "anxiety state." Dkt. 12 at 10 citing Tr. 522-523. While Dr. Molina noted "anxiety state" under "assessment" (Tr. 522) there is nothing showing he utilized any acceptable diagnostic tools or that he found medical signs sufficient to establish anxiety state as a medically determinable impairment. There is no evidence he actually performed any type of mental health evaluation. His treatment plan also makes no mention of any follow-up or treatment for "anxiety state." Tr. 523.

In short, the record contains no psychological evaluation, medical signs or symptoms that are necessary to establish depression or anxiety as medically determinable impairments. None of Ms. Villarino's doctors made any findings meeting the diagnostic criteria set forth in the Diagnostic and Statistical Manual of Mental Disorders ("DSM"), which might affirm the presence of a "medically determinable impairment." *Savannah v. Astrue*, 252 F. App'x 783 (9th Cir. 2007). At the hearing before the ALJ, Ms. Villarino testified she took Prozac and anxiety medication, but as noted above, a claimant's testimony cannot establish the existence of a

---

[4] While Ms. Villarino's medical records noted a past history of depression, the record lacks anything showing whether or who initially diagnosed Ms. Villarino with depression. The record also lacks any indication whether the past history of depression is so remote in time that it is not relevant to Ms. Villarino's disability claim, or a more recent matter.

REPORT & RECOMMENDATION - 10

medically determinable impairment at step two burden.

Accordingly, the Court concludes the ALJ's step two findings regarding depression and anxiety are supported by substantial evidence and that ALJ correctly found the record failed to establish depression and anxiety were medically determinable impairments.

### 2. *Fibromyalgia*

Ms. Villarino also argues the ALJ erred at step two by "ignoring the diagnosis of fibromyalgia" without providing any reasons to do so. Dkt. 12 at 6. The record shows Gerald Yorioka, M.D., noted fibromyalgia in his records. *See* Tr. 573-78. While there are no laboratory tests to confirm a diagnosis of fibromyalgia, the American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990. *See Jordan v. Northrop Grumman Corp*., 370 F.3d 869, 872 (9th Cir. 2004). The diagnosis is based on patient reports of a history of pain in five parts of the body, and patient reports of pain when at least 11 of 18 points cause pain when palpated by the examiner's thumb. *See Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001). While Dr. Yorioka noted fibromyalgia, there is nothing in the record showing he or any doctor made the requisite findings necessary to establish a fibromyalgia diagnosis or to deem the condition to be a medically determinable impairment for purposes of a step two determination. As such, the ALJ did not err in ignoring or in failing to comment on fibromyalgia. An ALJ does not have a duty to discuss all evidence presented to him when rendering a decision; rather, the ALJ only has a duty to discuss "significant probative" evidence that has been rejected. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *Timmons v. Comm'r of Soc. Sec*., 546 F. Supp. 2d 778, 795 (E.D. Cal. 2008). Because the record did not establish that fibromyalgia was a medically determinable impairment, the ALJ did not err in failing to discuss it, or find it to be a severe impairment at step two.

REPORT & RECOMMENDATION - 11

### 3. *Post-Laminectomy Syndrome*

And finally, Ms. Villarino argues the ALJ erred at step two by failing to find post-laminectomy syndrome to be a severe impairment and to discuss it. Dkt. 12 at 6. The record does not support this argument. The only mention in the record of the condition is Dr. Yorioka's notation of "post-laminectomy syndrome." Tr. 570-78. Dr. Yorioka's medical records do not mention any signs, symptoms, and laboratory findings, all of which are necessary to establish the condition was a medically determinable impairment. Additionally, Dr. Yorioka's notation of post-laminectomy syndrome is inconsistent with the findings of the doctors who treated Ms. Villarino's back problems and performed surgeries on her back. Ms. Villarino contends post-laminectomy syndrome is "[a]lso known as failed back surgery syndrome." Dkt. 12 at 6, n.1. However, none of the doctors who treated her back found she had failed back surgery or post-laminectomy syndrome. Ms. Villarino had back surgeries in 2000 and 2007. Dr. Molina, who began treating Ms. Villarino for problems that included her back, consistently noted she had chronic back pain, not post-laminectomy syndrome. *See* Tr. 433-536.

Accordingly, the ALJ did not err in failing to find post-laminectomy syndrome to be a severe impairment at step two. The Court also notes the ALJ considered Ms. Villarino's back pain in assessing her RFC (Tr. 18-19) and that there is no evidence post-laminectomy syndrome pain is different than the back pain Ms. Villarino's doctors noted. Thus the ALJ's failure to specifically reference post-lamainectomy syndrome is harmless. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (ALJ will generally not be reversed for harmless errors).

**D.      The ALJ's assessment of Ms. Villarino's credibility**

Ms. Villarino contends the ALJ erred in discounting her testimony about her limitations. As to her exertional limitations, the ALJ correctly discounted Ms. Villarino's testimony in

REPORT & RECOMMENDATION - 12

accepting Dr. Fuentes' opinion that Ms. Villarino's physical condition improved and indicated less than disabling physical functional limitations. Tr. 19. An ALJ may consider "ordinary techniques of credibility evaluation" including inconsistencies between a claimant's testimony and the opinion of a physician concerning the nature, severity, and effect of the symptoms of which claimant complains. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Accordingly, the ALJ did not err in discounting Ms. Villarino's complaints about her physical condition.

However, the ALJ's decision to discount Ms. Villarino's testimony as to her subjective pain complaints is not completely free of error. An ALJ must provide clear and convincing reasons to discount a claimant's testimony about pain symptoms suffered during the relevant period involved, which in this case is from September 1, 2010 onward. *Cf. Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). In other words, an ALJ may make an adverse credibility finding where the claimant fails to or inconsistently reports symptoms during a relevant time period. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

Here, the ALJ discounted Ms. Villarino's pain testimony based primarily on evidence outside the relevant time period. The ALJ relied on medical records that pre-dated September 1, 2010, and upon which the ALJ relied in finding her disabled for the closed period of July 2005 through August 31, 2010. Dr. Fuentes's September 2010 examination noted Ms. Villarino had chronic back pain but did not address to what extent that pain limited her functioning. The ALJ also discounted Ms. Villarino's testimony based on the type of treatment she received prior to September 2010 and how she was discharged from physical therapy in 2009 for missing too many appointments. Tr. 19. None of this evidence is probative of Ms. Villarino's credibility regarding her pain complaints for the period beginning September 1, 2010 and the ALJ thus erred in relying on it to discount Ms. Villarino's credibility.

The ALJ also discounted Ms. Villarino's testimony based on inconsistent statements she made about her drug use.  Substantial evidence supports this determination.  At the 2010 hearing the ALJ conducted, Ms. Villarino testified she last used "illegal drugs" in 2006.  Tr. 35.  The record (Tr. 472) shows this is inconsistent with medical test results showing she used cocaine in 2008. Tr. 19.  Accordingly, it was proper for the ALJ to discount Ms. Villarino's testimony based on her inconsistent drug testimony.

Because some of the ALJ's reasons supporting her adverse credibility finding are invalid, the Court must determine whether the ALJ's reliance on such reasons was harmless error.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (applying harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid).  Under the *Batson* standard, so long as there remains "substantial evidence supporting the ALJ's conclusions on . . . credibility" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," the error is deemed harmless and does not warrant reversal.  *Id.* at 1197.  The relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error.  Rather, it is whether the ALJ's decision remains legally valid, despite such error.  *Carmickle v. Commissioner of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Here, substantial evidence supports the ALJ's decision to discount Ms. Villarino's testimony based on the inconsistent statements she made about her drug use.  That finding is not tainted by the ALJ's improper reliance on evidence outside the relevant time period.  As such, the ALJ's error does not affect the ALJ's finding that Ms. Villarino is not credible.  Accordingly, the Court concludes the errors the ALJ committed in discounting Ms. Viilarino's testimony are harmless, and recommends the ALJ's credibility determination be affirmed.

REPORT & RECOMMENDATION - 14

**CONCLUSION**

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and this case be **REMANDED** for further administrative proceedings pursuant to sentence four. On remand, the ALJ should reconsider whether there was medical improvement beginning after August 31, 2010, as it pertains to Ms. Villarino's pain symptoms and complaints. The ALJ may develop the medical record in this regard. The ALJ's step two findings, and credibility determination as to Ms. Villarino's testimony should be affirmed. The ALJ's finding there was medical improvement as to Ms. Villarino's physical or exertional capacity should also be affirmed. The ALJ should be directed not to disturb her earlier finding that Ms. Villarino was disabled for the closed period of July 1, 2005 through August 31, 2010.

A proposed order accompanies this Report and Recommendation. Objections, if any, must be filed and served no later than **January 28, 2013.** If no objections are filed, the matter will be ready for the Court's consideration on **February 1, 2013**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 14th day of January, 2013.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT & RECOMMENDATION - 15